**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| APRIL M. DOMINGUEZ, *Plaintiff-Appellant*, | No. 13-17380 |
| v. | D.C. No. 2:12-cv-01589-BSB |
| CAROLYN W. COLVIN, Commissioner of Social Security, *Defendant-Appellee*. | ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Arizona
Bridget S. Bade, Magistrate Judge, Presiding

Argued and Submitted
November 20, 2015—San Francisco, California

Filed December 14, 2015
Amended February 5, 2016

Before: Michael J. Melloy,\* Sandra S. Ikuta,
and Andrew D. Hurwitz, Circuit Judges.

Order;
Opinion by Judge Ikuta

---

\* The Honorable Michael J. Melloy, Senior Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

## SUMMARY[**]

### Social Security

The panel affirmed the district court's order remanding the case to the Social Security Administrative Law Judge ("ALJ") for further proceedings after the government conceded that the ALJ made a legal error in deciding claimant's application for disability benefits under the Social Security Act.

The panel held that the district court did not err in remanding the case to the ALJ for further factual proceedings rather than for payment of benefits. The panel held that in light of inconsistencies, conflicts, and gaps in the record that require further administrative proceedings, the panel would not proceed to the question of whether the ALJ would be required to find claimant disabled if the treating physician's inconsistent reports were credited as true.

## COUNSEL

Eric G. Slepian, Phoenix, Arizona, for Plaintiff-Appellant.

John S. Leonardo, United States Attorney and Michael Johns, Assistant United States Attorney, Phoenix, Arizona; Laura Ridgell-Boltz (argued), Special Assistant United States Attorney, and John Jay Lee, Regional Chief Counsel, Region

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

VIII, Social Security Administration, Denver Colorado, for Defendant-Appellee.

---

**ORDER**

The opinion filed December 14, 2015, and appearing at 808 F.3d 403, is hereby amended as follows:

> On page 408, the last sentence of the last paragraph before Section III on that page should be deleted.

Petitions for rehearing or rehearing en banc will not be entertained from this amendment.

---

**OPINION**

IKUTA, Circuit Judge:

April Dominguez's second application for disability benefits was denied after an administrative law judge (ALJ) determined that she was not disabled.[1] After the government conceded that the ALJ made a legal error when it rejected the

---

[1] Dominguez has filed three applications for disability benefits. An ALJ denied her first application on March 6, 2009; the record is unclear as to the claimed disability onset date. An ALJ denied her second application (the one before us on appeal) on February 2, 2011, an application which claimed an amended disability onset date of March 1, 2006. An ALJ granted her third application for benefits, which claimed a disability onset date of February 2, 2011, on April 25, 2014. Neither the first nor third application for benefits is before us here.

opinions of Dominguez's treating physician without giving sufficient reasons, the district court exercised its discretion to remand the case to the ALJ for further proceedings. On appeal, Dominguez argues that the district court abused its discretion in not remanding with instructions to award benefits. We reject Dominguez's argument and therefore affirm.

I

On June 15, 2009, Dominguez submitted a claim under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f, which provides for the payment of benefits to individuals who are disabled, as defined in the Act. *See* 42 U.S.C. § 1382c(a)(3). Dominguez claimed that she was disabled as a result of a number of illnesses, including panic disorder with agoraphobia, morbid obesity, gastroparesis, back pain, carpal tunnel syndrome, and dementia.

In order to determine whether an applicant is disabled, an ALJ must follow a five-step process. *See* 20 C.F.R. § 416.920. First, the ALJ must determine: (1) whether the claimant did not perform substantial gainful activity during the period of claimed disability, *id.* § 416.920(a)(4)(i); (2) whether the claimant had an impairment, or a combination of impairments that is "severe," *id.* § 416.920(a)(4)(ii), meaning that it significantly limits the claimant's "physical or mental ability to do basic work activities," *id.* § 416.920(c); and (3) whether any severe impairment meets or equals the severity of one of the impairments listed in an appendix to the regulations, as well as meeting the duration requirement, *id.* § 416.920(d)–(e); 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant satisfies these three steps, then the claimant is disabled and entitled to benefits. If the claimant

has a severe impairment that does not meet or equal the severity of one of the ailments listed in the appendix, the ALJ then proceeds to step four, which requires the ALJ to determine the claimant's residual functioning capacity (RFC) based on all the relevant evidence in the record, including impairments not classified as "severe." *Id.* § 416.920(a)(4)(iv); *id.* § 416.920(e); *id.* § 416.945(a). The RFC is defined as "the most" the claimant can do, despite any limitations. *Id*. § 416.945(a). After developing the RFC, the ALJ must determine whether the claimant can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If not, then at step five, the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *see also Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Following these steps, the ALJ first determined that Dominguez had not engaged in substantial gainful activity since June 15, 2009. He next determined that Dominguez's carpal tunnel syndrome and obesity constituted severe impairments for purposes of 20 C.F.R. § 416.920(c), but that they did not, singly or in combination, meet a listing. Reviewing all the evidence in the record, the ALJ determined that Dominguez had the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), but could only occasionally "handle, finger and feel." In developing this RFC, the ALJ held that Dominguez's medically determinable impairments could cause the symptoms she alleged, but her statements regarding the "intensity, persistence and limiting effects" of the symptoms were not credible to the extent they were inconsistent with the RFC.

The ALJ explained his adverse credibility determination and his assessment of Dominguez's RFC in some detail. With respect to the carpal tunnel syndrome, the ALJ noted that in 2007, Dominguez received injections, which, according to the doctors' reports, alleviated her symptoms. In June 2009, she was referred to a hand surgeon for a carpal tunnel evaluation, but she did not follow up on the appointment. Nor did she obtain physical therapy for the syndrome. An examining physician, Dr. Stephanie Jenkinson, stated that any numbness could be easily fixed with surgery.

Next, the ALJ noted there was little evidence related to the claimant's treatment for obesity. The ALJ also discounted the claims of gastroparesis, noting (among other things) that a recent MRI showed no abnormalities.

Turning to her claims of panic disorder and agoraphobia, the ALJ noted that Dominguez had never been hospitalized for these conditions, medical reports showed that she had a good mental status, she got along socially, and psychological tests "suggest[ed] some over-reporting of symptoms." The ALJ also noted that her activities of daily living, including taking care of two children adopted in 2009, showed she was able to function.

With respect to her musculoskeletal disorders, the ALJ assigned little weight to the opinions of her treating physician, Dr. Rajesh Bhakta, stating only that they "are inconsistent with the overall medical evidence." The ALJ noted the opinion of Dr. Stephanie Jenkinson, an examining physician, that the claimant's impairment would not impose any limitations for the relevant duration period. But the ALJ gave this opinion little weight because the "medical evidence

indicates that the claimant has some severe impairments." The ALJ assigned substantial weight to the opinion of another examining physician, Dr. John Prieve, who stated that Dominguez was capable of a reduced range of light work.

In light of his determination of Dominguez's RFC, the ALJ concluded that Dominguez could not perform her past relevant work as a certified nursing assistant. Moving to the fifth step in the sequence, the ALJ considered testimony of a vocational expert regarding work available for a person with Dominguez's RFC. The ALJ determined that Dominguez could perform jobs that exist in significant numbers in the national economy, 20 C.F.R. § 416.969, including a "full array of unskilled light or sedentary jobs" such as first aid attendant, light office helper, order caller, or marker. Accordingly, the ALJ denied Dominguez's application for disability benefits.

Dominguez appealed, and in the district court, the government conceded that the ALJ had erred in discounting the opinion of Dr. Bhakta, who was Dominguez's treating physician, without articulating sufficient reasons for doing so. Under our precedent, if a treating doctor's opinion is contradicted by other medical evidence in the record, the ALJ may reject this opinion only by "providing specific and legitimate reasons supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here the ALJ did not provide such reasons, and so committed a legal error.

In light of this error, Dominguez moved for the district court to remand for an immediate computation and award of benefits. The court rejected this motion, and instead remanded the case to the ALJ for further proceedings to

determine whether Dominguez was entitled to benefits. Dominguez timely appealed the court's order.

## II

The only issue on appeal is whether the district court abused its discretion in remanding for further proceedings instead of remanding for benefits. We briefly review the legal framework for analyzing this issue.

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)) (alteration in original), but "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation," *id.* (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Our case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (discussing *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014)). The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Id.* If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and "all essential factual issues have been resolved." *Treichler*, 775 F.3d at 1101. In conducting this review, the district court must consider whether there are "inconsistencies between [the claimant's] testimony and the medical evidence in the record," *id.* at 1105, or whether the government has pointed to evidence in the record "that the ALJ overlooked" and explained "how that

evidence casts into serious doubt" the claimant's claim to be disabled, *Burrell*, 775 F.3d at 1141. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits. *Id.*

If the district court does determine that the "record has been fully developed," *id.*, and there are no outstanding issues left to be resolved, the district court must next consider whether "the ALJ would be required to find the claimant disabled on remand" if the "improperly discredited evidence were credited as true." *Id.* (quoting *Garrison*, 759 F.3d at 1020). Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. *Id.* A district court is generally not required to exercise such discretion, however. *See Connett v. Barnhart*, 340 F.3d 871, 874–76 (9th Cir. 2003); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). District courts "retain 'flexibility' in determining the appropriate remedy," *Burrell*, 775 F.3d at 1141 (quoting *Garrison*, 759 F.3d at 1021), and "a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Treichler*, 775 F.3d at 1106. "In particular, we may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Burrell*, 775 F.3d at 1141 (quoting *Garrison*, 759 F.3d at 1021); *see also Connett*, 340 F.3d at 874–76 (finding that

a reviewing court retains discretion to remand for further proceedings even when the ALJ fails to "assert specific facts or reasons to reject [the claimant]'s testimony").

### III

We now apply these principles to determine whether the district court abused its discretion in remanding this case for further proceedings. The threshold requirement, that the ALJ made a legal error in failing to provide legally sufficient reasons for rejecting evidence, is met, because it is undisputed that the ALJ erred in rejecting Dr. Bhakta's opinions.

We next turn to the question whether the record has been fully developed and further administrative proceedings would serve no useful purpose. *Burrell*, 775 F.3d at 1141. We begin by considering Dr. Bhakta's medical reports, which the ALJ erred in discrediting.

The record includes Dr. Bhakta's treatment notes from 2009 and 2010. On April 17, 2009, Dr. Bhakta's notes state that Dominguez reported "[n]o joint pain, swelling, injury, or limitation of motion. No muscle weakness, pain, cramps." The doctor's observations in the notes state, "no joint inflamation, good muscle tone." A check-the-box form prepared by Dr. Bhakta on the same date, April 17, 2009, stated that Dominguez could not bend, crawl, climb, stoop, or balance, and could only occasionally use her hands and feet. On October 19, 2009, Dominguez reported that she had no joint pain, swelling, injury, or limitation of motion, and Dr. Bhakta's notes confirmed that there was no joint inflammation and good muscle tone, and that he encouraged her to exercise 30 minutes five times a week. But the check-

the-box form prepared on the same date stated that Dominguez could not use either of her feet, although she could occasionally bend, crawl, climb, balance, or crouch. A year later, on October 21, 2010, the treatment notes stated that Dominguez was experiencing no joint pain, swelling, injury or limitation of motion, and no muscle weakness, pain, or cramps, which was confirmed by the doctor's observations, which found no joint inflammation and good muscle tone. But the final check-the-box form in the record, dated October 21, 2010, states that Dominguez can use her hands only occasionally and use her feet frequently.

Dr. Bhakta's opinions, however, conflict in some respects with his treatment notes. While Dr. Bhakta's treatment notes consistently indicate that Dominguez had no (or minor) limitations of motion or pain, his check-the-box forms show variously that Dominguez could only occasionally use her hands and feet (in April 2009), could not use either of her feet at all (in October 2009), and could use her feet frequently but her hands only occasionally (in October 2010). These inconsistencies raise significant questions regarding the extent of Dominguez's impairments.

Further, to the extent Dr. Bhakta's check-the-box opinions described significant musculoskeletal limitations, they are inconsistent with the reports of other physicians. In June 2009, Tharesh Udupa, a doctor of podiatric medicine, noted Dominguez's self-report that she had "[n]o physical disability and activities of daily living were normal," and diagnosed only ingrown nails and plantar fasciitis, to be treated by removing the nails; Dr. Udupa recommended treating the foot pain with stretching, ice, and pain medication. In February 2010, Dr. Stephanie Jenkinson, M.D., examined Dominguez for back pain, leg pain, and hand

numbness, and found her range of motion within normal limits. Although Dominguez displayed only a 40 degree range of motion in the lumbar region during the exam, Dr. Jenkinson observed Dominguez flexing in the lumbar region "well over 90 degrees" to fix her jeans. Dr. Jenkinson concluded that Dominguez had no limitations other than working at any heights due to her obesity. The record also contains reports from two non-examining physicians, Dr. Roy Brown, M.D., and Dr. James Hopkins, M.D. Both concluded that Dominguez could stand for six hours in an eight hour workday, and had no significant limitations preventing her from employment.

Dominguez argues that because the ALJ made a legal error in rejecting Dr. Bhakta's opinion, the district court should credit Dr. Bhakta's opinions regarding the extent of her limitations as true. If these opinions were deemed true, Dominguez claims, the ALJ would have been required to find her disabled. But this reverses the required order of analysis. As we have previously explained, the district court must "assess whether there are outstanding issues requiring resolution *before* considering whether to hold that the claimant's testimony is credible as a matter of law." *Treichler*, 775 F.3d at 1105. If such outstanding issues do exist, the district court cannot deem the erroneously disregarded testimony to be true; rather, the court must remand for further proceedings. *Id.* at 1105–06. Here, there are multiple inconsistencies that preclude the district court from moving on to the next step.

Finally, Dominguez contends that other physical and mental impairments identified in the medical record establish that she is disabled. But it is up to the ALJ, not the court, to determine how these impairments affect the formulation of

Dominguez's RFC. *See* 20 C.F.R. § 416.927(d)(2) (providing that the final responsibility for deciding RFC is reserved to the Commissioner). Moreover, Dominguez's claims are undercut by the ALJ's adverse credibility determination, which was supported by evidence of skepticism on the part of her physicians about her claims of limitations as well as by inconsistent reports from Dominguez herself. The ALJ's well-supported credibility concerns raise additional factual issues that require resolution.

There is yet another factual issue outstanding. The record is unclear as to the disability onset date of Dominguez's first application. In her second application for benefits, Dominguez claimed an amended disability onset date of March 1, 2006, and asked the ALJ to reopen the first application. Because the ALJ determined that Dominguez was not disabled, he did not address this motion or determine whether Dominguez had an earlier disability onset date. When further proceedings are necessary to determine the onset date, it is appropriate to remand for those proceedings. *See Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

In light of the inconsistencies, conflicts, and gaps in the record that require further administrative proceedings, we do not proceed to the next question, whether the ALJ would be required to find Dominguez disabled if Dr. Bhakta's inconsistent reports were credited as true. *See Burrell*, 775 F.3d at 1141 (discussing *Garrison*, 759 F.3d at 1020–21). Instead, we conclude that the district court did not err in remanding this case to the ALJ for further factual proceedings, rather than for payment of benefits.

**AFFIRMED**.